**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JERRY TRAHAN,

    Plaintiff,

    v.

U.S. BANK NATIONAL ASSOCIATION,

    Defendant.

No. C 09-03111 JSW

**ORDER DENYING MOTION TO REMAND AND SCHEDULING CASE MANAGEMENT CONFERENCE**

**INTRODUCTION**

Now before the Court for consideration is the Motion to Remand filed by Plaintiff Jerry Trahan ("Trahan"). Having considered the parties' papers, relevant legal authority, the record in this case, and having had the benefit of oral argument, the Court HEREBY DENIES the motion.

**BACKGROUND**

On May 28, 2009, Trahan filed a complaint in Alameda County Superior Court, in which he sought relief on behalf of himself and a putative class, defined as "[a]ll current and former California based employees of U.S. Bank, N.A. with the title 'Business Banking Officer,' including trainees for the Business Banking Offer [*sic*] position, however titled, who worked at any time from September 27, 2005 up to the time the class is certified." (*See* Docket No. 1, First Notice of Removal, Ex. A (Complaint, ¶ 15).)

Trahan's allegations against U.S. Bank arise following a judgment in *Duran v. U.S. National Bank Association*, Alameda Co. Sup. Ct. Case No. 2001-035537, in which that court

determined that Defendant, U.S. National Bank Association ("U.S. Bank"), illegally mis-classified employees with the title Business Banking Officer or Small Business Banking Officer as exempt employees. According to Trahan, U.S. Bank "has not reclassified the Business Banking Officers" as nonexempt employees and, as a result, U.S. Bank has failed to pay Trahan and the putative class overtime and rest and meal breaks to which they are entitled. Trahan also contends that U.S. Bank willfully failed to pay earned and unpaid wages to Trahan and class members upon termination of employment. (*See* Compl. ¶¶ 12-14, 22-43.) Based on these allegations, Trahan asserted claims for violations of California Labor Code section 1194, violations of California Business and Professions Code sections 17200, *et seq.*, violations of California Labor Code section 203, and Conversion. Trahan also sought statutory penalties under California Labor Code sections 210, 226.3, 558, and 1174.5.

On July 9, 2009, U.S. Bank removed the action to this Court and argued that subject matter jurisdiction existed based on the Class Action Fairness Act ("CAFA"), 28 U.S.C. section 1331(d)(2)(A), and based on diversity jurisdiction pursuant to 28 U.S.C. section 1332(a). Trahan subsequently moved to remand and argued that he had expressly alleged that the class consisted of less than 100 class members and that damages did not exceed $5,000,000. He also argued that damages for his individual claims did not exceed $75,000. (*See* Compl. ¶ 4.)

On November 30, 2009, the Court granted the motion to remand. (Docket No. 56.) In that Order, the Court concluded that the preponderance of the evidence standard applied, and it determined that US Bank has not met its burden to show the amount in controversy was equal to or exceeded $5,000,000.

U.S. Bank sought leave to file an interlocutory appeal, which the United States Court of Appeals for the Ninth Circuit granted. (Docket No. 62.) On May 28, 2010, the Ninth Circuit affirmed the Court's Order granting the motion to remand and stated that Trahan's

> wage and hour claims are inherently tied to employment contracts Trahan and the class had with U.S. Bank. Such claims cannot support punitive damages under California law. ... Trahan stipulated at oral argument that in light of these authorities ... he cannot, and will not, attempt to, collect punitive damages or pursue a conversion claim in this case. Once the claim for punitive damages and conversion were withdrawn by Trahan, for himself and the class, U.S. Bank conceded its inability to show that the jurisdictional threshold is satisfied.

2

(Docket No. 65, Opinion at 3.)

After the case was remanded, Trahan filed a First Amended Complaint ("FAC") in state court. Trahan dismissed, without prejudice, the claims for conversion, meal and rest break violations, and for statutory penalties based on Labor Code sections 210, 226.3, 558 and 1174.5. Trahan also narrowed the class definition to remove "trainees." Finally, Trahan alleged that "[t]he amount in controversy, inclusive of damages, restitution, attorneys fees, penalties and the value of injunctive and declaratory relief and exclusive of interests of costs, does not exceed $5,000,000." (*See* Second Notice of Removal, Docket No. 68-3 at ECF pages 38-47 (FAC ¶¶ 4, 15, 22-34, Prayer for Relief ¶ 2).)

Thereafter, a privacy notice was sent to approximately 170 putative class members, and the parties engaged in discovery. On January 12, 2012, Trahan filed a motion for class certification, which included declarations from 11 class members that described the number of overtime hours they had worked. U.S. Bank opposed the motion, and the parties continued to engage in discovery. On August 28, 2012, the state court granted Trahan's motion for class certification, and certified a class of BBOs who worked for U.S. Bank in California between September 27, 2005 and June 30, 2009.

U.S. Bank subsequently moved to stay, and the stated court denied that motion. It also sought appellate review of both orders, but the Court of Appeal denied the writ. The parties then continued to dispute the manner in which the case would proceed in state court, and U.S. Bank sought appellate review of the state court's orders, but its efforts were unsuccessful.

On October 7, 2013, U.S. Bank once again removed this action to this Court on the basis that CAFA jurisdiction exists. (Docket No. 67, Second Notice of Removal.) According to U.S. Bank,

> based on [its] own recently developed information and investigation, U.S. Bank has newly determined that removal is proper. Specifically, U.S. Bank has determined that the attorneys' fees in this matter have reached a level that exceeds the amount in controversy requirement under CAFA, particularly when combined with the aggregate damages and penalties sought and in controversy in this case.

(Second Notice of Removal ¶ 33.)

The Court shall address additional facts as necessary in the analysis.

3

## ANALYSIS

**A.  Legal Standards Relevant to Removal Jurisdiction.**

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant ... to the district court of the United States for the district and division embracing the place where such action is pending." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 7-8 (1983) (citation omitted); *see also* 28 U.S.C. § 1441.  However, federal courts are courts of limited jurisdiction. *See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Accordingly, the burden of establishing federal jurisdiction for purposes of removal is on the party seeking removal, and the removal statute is construed strictly against removal jurisdiction. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); *see also Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus*, 980 F.2d at 566.

CAFA provides that district courts have original jurisdiction over any class action in which (1) the amount in controversy exceeds five million dollars, (2) any plaintiff class member is a citizen of a state different from any defendant, (3) the primary defendants are not states, state officials, or other government entities against whom the district court may be foreclosed from ordering relief, and (4) the number of plaintiffs in the class is at least 100.  28 U.S.C. §§ 1332(d)(2), (d)(5).  "[U]nder CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006).  Thus, U.S. Bank bears the burden to establish that this Court has jurisdiction over Trahan's claims. *Id.*  In order to determine whether the removing party has met its burden, a court may consider the contents of the removal petition and "summary-judgment-type evidence." *Valdez* 372 F.3d at 1117.

**B.  U.S. Bank's Second Notice of Removal is Timely.**

As a threshold issue, the parties dispute whether U.S. Bank removed this action in a timely manner.  In general, a defendant must file a notice of removal within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting

4

forth the claim for relief upon which such action or proceeding is based...." 28 U.S.C. § 1446(b)(1).  Alternatively, "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one or which has become removable." *Id.* § 1446(b)(3).  The Ninth Circuit recently held that sections "1441 and 1446, read together, permit a defendant to remove outside the two thirty-day periods on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines." *Roth v. CHA Hollywood Medical Center, L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013).

In *Roth*, the court acknowledged that its construction of these statutory provisions could result in some strategic gamesmanship, especially in CAFA cases. *Id.* at 1126 (noting that in non-CAFA diversity case, "advantage gained through such gamesmanship is limited by the fact that a notice of removal must be filed ... within one year of the commencement of the action"); *see also* 28 U.S.C. § 1446(c)(1).  However, it also stated that plaintiffs could protect themselves from such gamesmanship by providing defendants with a document "from which removability can be ascertained." *Id.* (citing 28 U.S.C. § 1446(b)(3)).

U.S. Bank argues that *Roth* is applicable here, because it has not run afoul of either Section 1446(b)(1) or (b)(3).[1]  Trahan argues that the time period set forth in Section 1446(b)(3) was triggered in January 2012, when he filed his motion for class certification in state court. According to Trahan, that motion, and its accompanying declarations, would have put U.S. Bank on notice that the amount in controversy could exceed $5,000,000.[2]

In *Harris v. Bankers Life and Casualty Co.*, the Ninth Circuit held that "notice of removability under [section] 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry."

---

[1] The parties do not argue that U.S. Bank's first attempt to remove this case was untimely.  Thus, there is no dispute that U.S. Bank did not run afoul of Section 1446(b)(1).

[2] U.S. Bank concedes that a motion can put a defendant on notice that a case is or has become removable. *See, e.g., Williams v. Ruan Transport Corp.*, 2013 WL 5492205 (E.D. Cal. Oct. 2, 2013); *see also* 28 U.S.C. § 1446(b)(3).

5

1    425 F.3d 689, 694 (9th Cir. 2005). The Ninth Circuit recently reiterated that "defendants need
2    not make extrapolations or engage in guesswork" in order to determine whether a case is
3    removable. *Kuxhausen v. BMW Financial Servs. NA, LLC,* 707 F.3d 1136, 1140 (9th Cir.
4    2013). However, it also noted that the removal statute does require "'a defendant to apply a
5    reasonable amount of intelligence in ascertaining removability,'" such as by "[m]ultiplying
6    figures clearly stated in a complaint." *Id.* (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d
7    196, 206 (2d Cir. 2001)).

8    Trahan urges the Court to follow the reasoning set forth in *Banta v. American Medical
9    Response, Inc.*, 2011 WL 2837642 (C.D. Cal. July 15, 2011). In that case, the court concluded
10   that the defendants' attempt to remove a case three years after the complaint was filed was
11   untimely. *Id.*, 2011 WL 2837642, at *7-*8. The court noted that the plaintiff's complaint was
12   "indefinite," in that it did not expressly state the amount in controversy. However, it also found
13   that the allegations in the complaint would have placed the defendants on notice that the amount
14   in controversy exceeded $5,000,000. Specifically, the court reasoned that because the
15   defendants "purportedly know how many persons they employ and much they are paid, they
16   were on notice that the amount in controversy (whether or not it could be proven) was a very
17   large sum of money." *Id.*, 2011 WL 2837642, at *7. Trahan focuses heavily on this language
18   to argue that, once he filed his motion for class certification, U.S. Bank would have been on
19   notice that the amount in controversy would exceed $5,000,000.

20   The Court finds Trahan's argument unpersuasive, and it also declines to follow *Banta*.
21   *Banta* was decided prior to *Roth*, and, as noted, the *Roth* court acknowledged that its holding
22   could result in the type of gamesmanship that concerned the *Banta* court. *See Banta*, 2011 WL
23   2837642, at *6. However, the *Roth* court reiterated that, pursuant to *Harris*, "a defendant does
24   not have a duty of inquiry if the initial pleading *or other document* is 'indeterminate' with
25   respect to removability." 720 F.3d at 1125.

26   Trahan did not expressly state that the amount in controversy would exceed $5,000,000
27   in the motion for class certification or the declarations, and he did not make any specific
28   assertions about the amount of damages that might be available to the class or the value of

6

injunctive relief. (*See* Notice of Removal, Ex. A, Docket No. 68-15 at ECF pages 102-120, Docket No. 68-16 at ECF pages 1-12, Docket No. 68-19 at ECF pages 27-80.) Those documents also do not contain information that would permit U.S. Bank to make a simple mathematical calculation. The Court concludes that those documents were "indeterminate," as to the amount in controversy. As such, pursuant to *Harris* and *Roth*, U.S. Bank was not required to engage in the extrapolations that would have been required to determine whether the amount in controversy exceeded $5,000,000. *See Kuxhausen*, 707 F.3d at 1140. Further, Trahan does not refer the Court to any statements or documents in the state court proceeding from which it could evaluate whether U.S. Bank had objective - versus subjective - knowledge that the amount in controversy had been satisfied. *Cf. Bea v. Encompass Insuraranc Co.*, 2013 WL 174910 (N.D. Cal. April 23, 2013) (finding removal was untimely based, in part, on defendant's admission in state court pleading that amount in controversy exceeded $75,000 and distinguishing *Harris* on basis that statement reflected defendant's objective - versus subjective - knowledge).

**B.     The Preponderance of the Evidence Standard Applies.**

Because the Court has determined that U.S. Bank timely removed this action, the Court turns to a second threshold dispute: the appropriate standard of review. U.S. Bank maintains its position that the preponderance of the evidence standard applies, and it relies on *Standard Fire Insurance Company v. Knowles*, – U.S. –, 133 S.Ct. 1345, 1348-49 (2013) ("*Standard Fire*"). and *Rodriguez v. AT&T Mobility Services, LLC*, 728 F.3d 975 (9th Cir. 2013). Trahan maintains that the appropriate standard of review is the legal certainty standard set forth in *Lowdermilk v. U.S. Bank National Ass'n*, 479 F.3d 994 (9th Cir. 2007).

In *Standard Fire*, the Supreme Court held that a plaintiff who stipulates, prior to class certification, that the amount in controversy is less than $5,000,000 cannot remove a case from CAFA's scope, because the stipulation is not binding on absent class members. *Standard Fire*, 133 S.Ct. at 1347, 1349. The Supreme Court relied, in part, on CAFA's text, which provides that in order to determine whether the jurisdictional threshold is met, a court must aggregate the claims of "'persons (named or unnamed) who fall within the definition of the *proposed* or

7

certified class.'" *Id.* at 1348 (quoting 28 U.S.C. § 1332(d)(1)(D)) (emphasis in *Standard Fire*). The Court also reasoned that because a court's inquiry into jurisdiction is limited "to examining the case as of the time it was filed in state court." *Id.*, at 1349 (quotations and citations omitted).

In *Rodriguez*, following *Standard Fire*, the Ninth Circuit vacated a district court's order granting a motion to remand based on a pre-certification waiver of CAFA's jurisdictional minimum. 728 F.3d at 976. The *Rodriguez* court also addressed the standard of review applicable to motions to remand. The Ninth Circuit held that its reasoning in *Lowdermilk* was "clearly irreconcilable with the Supreme Court's reasoning in *Standard Fire.*" *Id.* at 977. Accordingly, it determined that "*Lowdermilk* has been effectively overruled, and that the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard." *Id.* Trahan argues that the Ninth Circuit's holding in *Rodriguez* only applies to cases in which no class has been certified. The Court is not persuaded. However, even if *Rodriguez* is limited to pre-certification cases, for the reasons set forth below, it would not alter the Court's analysis.

The *Rodriguez* court evaluated whether it could re-examine *Lowdermilk*, and it stated that it was required to focus on the "*reasoning* and *analysis* in support" of *Standard Fire*'s holding, "rather than the holding alone." 728 F.3d at 979 (quoting *United States v. Lindsey*, 634 F.3d 541, 550 (9th Cir. 2011) (emphasis in *Lindsey*); *see also id.* ("We must, then, follow our court's directive to look beyond the narrow conclusions of *Lowdermilk* and *Standard Fire.*"). The court concluded that *Standard Fire* directed courts to consider the potential claims of absent class members in order to determine the amount in controversy. "*Lowdermilk's* legal certainty standard is a consequence of plaintiff's ability to plead to avoid federal jurisdiction. That principle is not viable in actions involving absent class members." *Rodriguez*, 728 F.3d at 981.

In this case, although Trahan alleged in the FAC that the amount in controversy was less than $5,000,000, pursuant to *Standard Fire*, those allegations cannot bind the class. Further, although a class has now been certified, and assuming *arguendo* Trahan could legally bind the

8

class without providing notice of that stipulation, it does not resolve the issue, because Trahan was not willing to stipulate that the amount in controversy, including attorneys' fees, was less than $5,000,000.

Accordingly, the Court concludes that the preponderance of the evidence standard applies.

**C.   U.S. Bank Has Met Its Burden to Show that the Amount in Controversy Exceeds $5,000,000.**

The parties also dispute whether U.S. Bank has shown that the amount in controversy exceeds $5,000,000. Setting aside any disputes about how overtime damages and waiting time penalties should be calculated, both Trahan and U.S. Bank agree that overtime damages and waiting time penalties alone would not trigger CAFA's jurisdictional minimum. (*Compare* Mot. at 14:20-15:3 *with* Opp. Br. at 10:9-12:14.)

U.S. Bank argues that attorneys' fees tip the jurisdictional balance. It is well established that "[w]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Lowdermilk*, 479 F.3d at 1000. "The Ninth Circuit has not yet expressed any opinion as to whether expected or projected future attorney fees may properly be considered 'in controversy' at the time of removal for purposes of the diversity-jurisdiction statute, and the decisions of the district courts are split on the issue." *Reames v. AB Car Rental Service*, 899 F. Supp. 2d 1012, 1061 (D. Ore. 2012) (citing cases). The *Reames* court notes that a majority of the district courts to have considered this issue have concluded that a court should focus on the amount of attorneys' fees accrued or incurred at the time of removal.

In this case, U.S. Bank submits evidence of the amount of fees it has incurred to date, as well as evidence relating to Trahan's counsel's hourly rates. In addition, U.S. Bank submits records from the *Duran* case setting forth the number of hours Trahan's counsel expended on that case. (*See* Second Notice of Removal ¶ 30.) In light of those figures, the length of time this case has been litigated, and U.S. Bank's estimates of the hours it has incurred, and even if this Court accepts Trahan's figures as to the overtime damages and waiting time penalties, the

9

Court finds that U.S. Bank has put forth sufficient evidence to show that it is more likely than not that Trahan has incurred attorneys' fees in an amount that places the amount in controversy above $5,000,000.[3]

**D.    Trahan's Request for Attorneys' Fees.**

Pursuant to 28 U.S.C. § 1447(c), Trahan requests an award of attorneys' fees and costs incurred as a result of U.S. Bank's allegedly improper removal. Because the Court denies the motion to remand, it denies Trahan's request for attorneys' fees.

## CONCLUSION

For the foregoing reasons, Trahan's Motion to Remand is DENIED. The parties shall appear for a case management conference on February 21, 2014 at 1:30 p.m., and they shall submit a joint case management conference statement by no later than February 14, 2014.

**IT IS SO ORDERED.**

Dated: January 13, 2014



JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

---

[3] Although it is not dispositive, as noted, Trahan was unwilling to stipulate that the attorneys' fees would render the total amount in controversy less than $5,000,000.