**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY TRAHAN, | No. C 09-03111 JSW |
| Plaintiff, | **ORDER GRANTING MOTION TO DECERTIFY CLASS AND SETTING STATUS CONFERENCE** |
| v. | |
| U.S. BANK NATIONAL ASSOCIATION, | |
| Defendant. | |

This matter comes before the Court upon consideration of the motion to decertify class, filed by Defendant U.S. Bank National Association ("U.S. Bank"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it HEREBY GRANTS U.S. Bank's motion.

**BACKGROUND**

Plaintiff, Jerry Trahan ("Trahan") originally filed this case in Alameda County Superior Court ("Superior Court") in 2009, as a continuation of *Duran v. U.S. Bank National Association*. In the *Duran* case, the plaintiffs, a group of Business Banking Officers ("BBO"), alleged that U.S. Bank mis-classified them as exempt employees under California Labor Code section 1171 ("the outside salesperson exemption"). (First Amended Complaint ¶ 12.)[1] After a trial, U.S. Bank was found to have mis-classified the BBO position as an exempt position. However, the California Supreme Court subsequently affirmed the Court of Appeal's decisions

---

[1] The First Amended Complaint is located at Docket No. 68-4 at ECF pages 35-44.

to vacate the judgment against U.S. Bank and to decertify the class. *Duran v. U.S. Bank National Association,* 59 Cal. 4th 1 (2014).

In this case, Trahan alleges that, notwithstanding the judgment in *Duran*, now vacated, U.S. Bank continues to mis-classify the BBO position as a non-exempt position. Trahan further alleges that he and the class members "were regularly scheduled as a matter of uniform company policy to work and in fact worked as salaried bank employees in excess of eight hours per workday and/or in excess of forty hours per workweek without receiving straight time or overtime compensation for such overtime hours." (FAC ¶¶ 13-14.)

The Court shall address additional facts, as necessary, in its analysis.

## ANALYSIS

**A.     The Parties' Objections to Evidence.**

The parties object to almost all the evidence submitted in connection with this motion. Although the Superior Court considered and ruled on many of the same objections, the parties have resubmitted the evidence to this Court for consideration. Accordingly, the Court rules on the objections anew.

Trahan explicitly objects to much of U.S. Bank's evidence on the basis that it is not relevant, and U.S. Bank, implicitly, raises the same objections to Trahan's evidence. The Court's analysis "will entail some overlap with the merits of [Trahan's] underlying" claims. *Wal-Mart Stores, Inc. v. Dukes*, – U.S. –, 131 S. Ct. 2541, 2551 (2011). However, the Court "is required to examine the merits of the underlying claim[s] . . . , only inasmuch as it must determine whether common questions exist; not to determine whether class members could actually prevail on the merits of their claims." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011) (citing *Wal-Mart*, 131 S. Ct. at 2552 n.6). "To hold otherwise would turn class certification into a mini-trial." *Ellis*, 657 at 983 n.8; *cf. Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, – U.S. –, 133 S. Ct. 1184, 1185 (2013) ("Merits questions may be considered to the extent - but only to the extent - that they are relevant to determining whether the" prerequisites of Federal Rule of Civil Procedure 23 are satisfied.).

The Court concludes that the parties' relevance objections are more properly characterized as disputes over the weight of the evidence.[2] Therefore, to the extent the parties asserted relevance objections, the Court OVERRULES the objections, and it has considered the evidence within the rubric required under *Wal-Mart* and *Ellis*.[3]

**The Court rules on Trahan's objections as follows:**

The Court OVERRULES the objections to portions of the declarations submitted by Brent Biggs, Ted Biggs, Birnbryer, Brandt, Catton, Carreon, Corral, Dampier, Dias, Doughty, Gediman, Hwang, Jeske, Jimenez, John, Kaur, Klingman, Lim, Lufti, Maier, Moulton, Pai, Pizarroso, Racusin, Pokuta-Ramirez, Reed, Summers, Tamblyn, Tobes, Vanderford, Weimer, Wheaton (11/8/2010), and Wheaton (3/30/2012), except as set forth in the remainder of this section. To the extent any of the declarations contain statements that qualify as improper legal conclusions, *e.g.,* "I was exempt," or "I exercised discretion and independent judgment," the Court has not considered such statements, and it SUSTAINS Trahan's objections to those statements. (*See, e.g.,* Jeske Decl., ¶ 4; Jimenez Decl., ¶¶ 4, 21.)

The Court SUSTAINS the objection to the portion of the Dampier Declaration in which he states that "[f]our of the five BBOs on my team ... understand the job expectations, including the expectation that they spend a majority of their time outside of the office." (Dampier Decl., ¶ 7.) The Court SUSTAINS the objection to the portion of the Gediman Declaration in which he states that "[s]uch unambiguous language makes the Bank's expectation regarding outside time crystal clear." (Gediman Decl., ¶ 8.) The Court SUSTAINS the objection to that portion of the Jimenez declaration regarding Mr. Wynne's conduct, as irrelevant to the issues presented by this motion. (Jimenez Decl., ¶ 21.)

---

[2] For example, U.S. Bank objects to nine of Trahan's declarations on the basis the declarants do not adequately distinguish between work that *must* be done inside a branch and work that *can* be done outside of a branch.

[3] The Court expresses no opinion on whether the evidence submitted by the parties would be admissible on a motion for summary judgment or at trial. *See, e.g., Dominguez v. Schwarzenegger*, 270 F.R.D. 477, 483 n.5 (N.D. Cal. 2010) (noting that evidence supporting a motion for class certification need not be admissible at trial).

The Court OVERRULES Trahan's objections to the entirety of the declarations submitted as US Bank's exhibits 27-63, 67-68, 71-73, and it OVERRULES the objections to U.S. Bank's exhibit 77 as moot.

**The Court rules on U.S. Bank's objections as follows:**

U.S. Bank objects to the declarations submitted by Anita Jimenez and James Klingman, on the basis that they have submitted declarations that contain statements that contradict their earlier declarations. The Court OVERRULES these objections on the basis that they do not go to the admissibility of the evidence.

U.S. Bank objects to, and moves to strike Trahan's separate statement of facts, submitted with his compendium of evidence, on the basis that it violates this Court's Order setting page limitations on the parties' briefs. The Court finds this objection well taken. Because Trahan was able to refer the Court to the separate factual statement, instead of the citing to the record in his opposition brief, he was able to comply with the Court's page limitations. In the interest of resolving the motion to decertify on the merits, the Court DENIES U.S. Bank's motion to strike. However, the Court places all parties on notice that, going forward, it shall not accept separate factual statements, and it shall strike such statements without further notice to either parties. All citations to the record must be cited in the parties' briefs.

**B.     The Nature of Trahan's Claims and U.S. Bank's Primary Affirmative Defense.**

Trahan's theory of the case is that U.S. Bank improperly classifies the BBO position as "exempt" from California's overtime laws, and he asserts claims against U.S. Bank for violations of California Labor Code sections 203 and 1194 and for violations of California's Unfair Competition Law, Business and Professions Code sections 17200, *et seq.*[4] "Under

---

[4] U.S. Bank urges the Court to grant the motion to decertify the class solely on the basis that Trahan's theory of liability is not supported by California law, which it argues makes clear that employees, not positions, are subject to exemptions. The Court DENIES this request. Trahan contends that U.S. Bank has structured the BBO position in such a fashion that it can only be performed as an inside sales position. That theory does not necessarily conflict with California law or preclude class certification. *See, e.g., Duran*, 59 Cal. 4th at 31 (noting that "individual issues will not *necessarily* overwhelm common issues when a case involves exemptions premised on how employees spend the workday")

4

1  California law, employees are entitled to overtime pay for any work in excess of eight hours in
2  one workday, or 40 hours in any one workweek, unless the employer affirmatively establishes
3  that the employee qualifies for a statutory exemption." *Heyen v. Safeway Inc.*, 216 Cal. App.
4  4th 795, 816 (2013); *see also Greko v. Diesel U.S.A., Inc.*, 277 F.R.D. 419, 422 (N.D. Cal.
5  2011).

6  U.S. Bank's primary affirmative defense is that BBOs are subject to California's outside
7  sales exemption. The outside sales exemption applies to any person "who customarily and
8  regularly works more than half the working time away from the employer's place of business
9  selling tangible or intangible items or obtaining orders or contracts for products, services, or use
10 of facilities." California Industrial Welfare Commission, Wage Order 4-2001 (Jan. 1, 2001), §
11 1(C), 2(M), *codified at* Cal. Code Regs., tit. 8, § 11040; *see also* Cal. Labor Code § 1171. In
12 order to determine whether this exemption applies, California law "'takes a purely quantitative
13 approach.'" *Duran*, 59 Cal. 4th at 26 (quoting *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785,
14 797 (1999)).

15 In *Ramirez*, the Supreme Court noted that the quantitative approach had created
16 confusion about how the number hours worked was to be determined: whether it should be
17 determined by way of an employer's job description; or whether it should be determined by
18 calculating the average hours an employee worked on sales activity. *Ramirez*, 20 Cal. 4th at
19 802. The *Ramirez* court noted that neither alternative was wholly satisfactory and created two
20 potential pitfalls. First, an employer could escape liability by "fashioning an idealized job
21 description that had little basis in reality." *Id.* Second, an employee who fell below the 50
22 percent threshold because of substandard performance could evade a valid exemption. *Id.*
23 Therefore, under California law, the focus remains "exclusively on whether the employee
24 spends more than half of the workday engaged in sales activities outside the office," and

---

27 (emphasis in original); *Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 329-31,
   335-37 (2004) (upholding class certification order where record demonstrated that class
28 members performed jobs that were highly standardized and performed tasks that, as a matter
   of law, were non-exempt).

5

"requires scrutiny of both the job description and an employee's own work habits." *Duran*, 59 Cal. 4th at 26. However, a fact-finder

> must inquire first and foremost, how the employee *actually* spends his or her time. . . . Ancillary questions include whether the employee's practice diverges from the employer's realistic expectations, whether there was any concrete expression of employer displeasure over an employee's substandard performance, and whether these expressions were themselves realistic given the actual overall requirements of the job.

*Duran*, 59 Cal. 4th at 26 (citing *Ramirez*, 20 Cal. 4th at 802 (internal quotations omitted, emphasis in original); *see also Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 945 (9th Cir. 2009) (court "must conduct an individualized analysis of the way each employee actually spends his or her time, and not simply review the employer's job description").[5]

**C.     The Class Certification Order.**

On August 28, 2012, the Superior Court, applying California law, granted Trahan's motion for class certification and certified the following class: all current and former California-based employees of [U.S. Bank], who were employed as a BBO at any time from September 27, 2005 through June 30, 2009. (Order Granting Plaintiff's Motion for Class Certification at 31:22-23 (hereinafter "Class Certification Order").)[6] The Superior Court found that Trahan had met his burden to show that "factual issues relating to [his] *prima facie* case are uniform," *i.e.* that "BBOs have always been classified as exempt; ... all receive a salary and are eligible for incentive pay and have been paid under the same compensation system; and ... none has ever been paid for any overtime worked." (Class Certification Order at 7:24-8:2.)

The Superior Court also evaluated whether U.S. Bank's affirmative defenses presented common questions and whether such questions predominated over potentially individualized issues. It concluded they did. (*Id.* at 30:7-10.) For example, the Superior Court noted that the applicability of the outside sales exemption is based on a "purely quantitative approach," and

---

[5] U.S. Bank also argues that BBOs also would qualify for the administrative exemption and the commission sales exemption. In light of the Court's ruling regarding the outside sales exemption, the Court does not address the parties' arguments on these exemptions.

[6] The Class Certification Order is located at Docket No. 70 at ECF pages 89-111 through Docket No. 70-1 at ECF pages 1-11.

6

that "the primary consideration is how employees actually spend their time." (*Id.* at 8:17-19, 9:4, citing *inter alia*, *Ramirez*, 20 Cal. 4th at 797, 802.) The Superior Court found that the common questions regarding this affirmative defense included: the proportion of time BBOs spent outside of U.S. Bank's branches; the nature of U.S. Bank's expectations regarding where and how BBOs spent their work time; and whether U.S. Bank's expectations were realistic.

After reviewing the evidentiary record, the Superior Court found there were "no material variances across the putative [class] with respect to the factual questions that pertain to the outside sales exemption." Thus, common questions predominated over individualized issues. (*Id.* at 18:15-16; *see also id.* at 19:11-12 (finding U.S. Bank had not effectively rebutted "overwhelming testimony" of BBOs that they spent more time working on bank property than working elsewhere).) The Superior Court also concluded that "it *may* not be unfair to extrapolate from representative witness testimony and/or rely on survey evidence to determine liability for the [class] as a whole." (*Id.* at 19:22-20:1 (emphasis added).) Based on its view that "few if any individualized issues exist," the Superior Court concluded that those issues could be managed using "one or more of the 'innovative tools' that have been approved by California Courts," and it required Trahan to submit a trial plan that would confirm that a class trial "will be manageable." (*Id.* at 31:16-18, 31:13-14.) Before the Superior Court could rule on the parties' proposed trial plans and Trahan's motion to approve a survey instrument, U.S. Bank filed its notice of removal.

**D.     Legal Standard on Motion to Decertify.**

Federal Rule of Civil Procedure 23(c)(1)(C), provides that an order certifying a class "may be altered or amended before final judgment." In considering a motion to decertify, "a court must reevaluate whether the class continues to meet the requirements of Rule 23." *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 544 (C.D. Cal. 2012). The Court also may consider "subsequent developments in the litigation." *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982). It is undisputed that U.S. Bank will bear the burden to establish its affirmative defenses at trial. However, Trahan continues to bear the burden to

7

1  show that this case may be tried on a classwide basis. *See, e.g., Marlo v. United Parcel Service,*
2  *Inc.,* 639 F.3d 942, 947 (9th Cir. 2011); *cf. Duran* 59 Cal. 4th at 26.

3  U.S. Bank argues Trahan cannot meet his burden on the issues of commonality,
4  predominance, and manageability, because its affirmative defenses cannot be resolved in one
5  stroke. Rather, it contends that the Court would be required to conduct mini-trials that address
6  each class member's work performance.

### 1.     Commonality.

8  Rule 23 requires that there be "questions of fact and law which are common to the
9  class." Fed. R. Civ. P. 23(a)(2). The class claims "must depend on a common contention,"
10 which "must be of such a nature that it is capable of classwide resolution – which means that
11 determination of its truth or falsity will resolve an issue that is central to the validity of each one
12 of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551. The commonality requirement is
13 construed permissively and is "less rigorous than the companion requirements of Rule
14 23(b)(3)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

15 In light of the fact that commonality requirement is subject to a "less rigorous" standard
16 and can be satisfied by even a single question, the Court concludes that Trahan has met his
17 burden to show that there are common factual legal issues, including those identified by the
18 Superior Court and, for example, the issue of whether "tacking" is permitted to establish an
19 employee is exempt.

### 2.     Predominance.

21 In order to maintain class certification, Trahan also must establish that "questions of law
22 or fact common to class members predominate over any questions affecting only individual
23 members." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether
24 proposed classes are sufficiently cohesive to warrant adjudication by representation" and
25 requires a "much more rigorous" analysis than the issue of commonality. *Amchem Products,*
26 *Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). Predominance focuses "on the relationship
27 between the common and individual issues. When common questions present a significant
28 aspect of the case and they can be resolved for all members of the class in a single adjudication,

1    there is clear justification for handling the dispute on a representative rather than on an

2    individual basis." *Hanlon*, 150 F.3d at 1022. "[I]f the adjudication of a defense for which the

3    defendant has the burden of proof would necessitate individual inquires, and those inquiries

4    would predominate over inquiries into common questions, certification should be denied." *In re*

5    *Wells Fargo Home Mortgage Overtime Pay Litigation*, 268 F.R.D. 604, 612 (N.D. Cal. 2010)

6    ("*In re Wells Fargo II*").

7    Trahan argues that the common questions still predominate, because the primary focus

8    will be on whether U.S. Bank's expectations about the requirements of the BBO position,

9    including where it is performed, are realistic. U.S. Bank argues that Trahan has not met his

10   burden to show that there is common evidence that will answer these questions. Thus,

11   according to U.S. Bank, he has not met his burden to show by common evidence that

12   "misclassification is the rule rather than the exception." *See Sav-On*, 34 Cal. 4th at 330. In

13   resolving this issue, the Court finds guidance in *Vinole*, 571 F.3d 935, *In re Wells Fargo Home*

14   *Mortgage Overtime Pay Litigation*, 571 F.3d 953 (9th Cir. 2009) ("*In re Wells Fargo I*"), and *In*

15   *re Wells Fargo II*.

16   In *Vinole*, the defendant categorized its External Home Loan Consultants ("HLCs") as

17   exempt employees based on the outside sales exemption. *Vinole*, 571 F.3d at 938. The district

18   court granted the defendant's motion to deny class certification. The Ninth Circuit affirmed,

19   noting that "a court evaluating the applicability of the outside sales exemption must conduct an

20   individualized analysis of the way each employee actually spends his or her time, and not

21   simply review the employer's job description." *Id.* at 945.[7] The *Vinole* court noted that the

22   defendant did not keep records to monitor any particular HLC's eligibility for the exemption,

23   and it also noted that the amount of time HLCs "spent inside and outside the office ... varies

24   greatly." *Id.* at 938; *see also id.* at 947 ("Plaintiffs' claims will require inquiries into how much

25   time each individual HLC spent in or out of the office and how the HLC performed his or her

26   job; all of this where the HLC was granted almost unfettered autonomy to do his or her job.").

---

[7] As in the *Duran* case, the parties do not dispute that BBOs are engaged in sales activities. Rather "[t]he dispute concerns *where* they typically did the work." *Duran*, 59 Cal. 4th at 26 (emphasis in original).

9

1   The court also noted that there was no evidence that the defendant had a company-wide
2   policy that governed how employees spent their time or that the HLCs' duties and experiences
3   were uniform, which could have "diminish[ed] the need for individualized inquiry." *Id.* at 947
4   (citation omitted). Finally, although the plaintiffs argued that any individualized issues could
5   be mitigated by using tools such as questionnaires or surveys, the court found those arguments
6   unpersuasive, and it questioned whether such tools would have assisted the court. *Id.*

   In *In re Wells Fargo I*, the court discussed the relevance of uniform corporate policies to
the predominance inquiry. In that case, the district court found a number of individualized
inquiries would be required to determine the application of several exemptions, including the
outside sales exemption. However, because the defendant uniformly categorized the employees
as exempt, it concluded that those issues did not predominate. The Ninth Circuit reversed and
found that the district court abused its discretion by relying on the defendant's decision to
uniformly categorize the position as exempt, "to the near exclusion of other factors relevant to
the predominance inquiry." *In re Wells Fargo I*, 571 F.3d at 959. The court reasoned that the
"blanket exemption policy does nothing to facilitate common proof on the otherwise
individualized issues." *Id.* The court noted, however, that "[a] centralized policy requiring
employees to be at their desks for 80% of their workday would change this individual issue into
a common one." *Id.*

   On remand, the district court denied the motion for class certification, finding that the
plaintiffs had not shown that common issues predominated over the individualized issues. *In re
Wells Fargo II*, 268 F.R.D. at 613. In addition to relying on *In re Wells Fargo I*, the court also
relied on *Vinole*, which "appear[ed] to foreclose any viable path for certifying this action as a
class action," *Id.* at 610. The court noted that, as in the *Vinole* case, the defendants uniformly
categorized the position at issue as exempt, claimed to have no control over how employees
performed their job, and did not monitor the manner in which employees performed their duties.
The record also showed variations in the amount of time each employee spent inside or outside
of the office. *Id*. The court noted that although "class members had uniform job descriptions,
uniform training, the same primary goal . . ., uniform job expectations, similar compensation

10

1 plans, and standardized employee evaluation standards," it also had previously held that
2 "analysis of five of the seven exemptions asserted by [the defendant] would require fact-
3 intensive inquiries into how individual [employees] performed their job." *Id.* at 611.

4 The plaintiff argued that those individualized issues could be addressed by way of
5 random sampling, which the court could use to extrapolate across the class to determine
6 liability. The court rejected this argument. It reasoned that if the plaintiff's sampling proposal
7 could be used to show that *some* members of the class were exempt, the plaintiff had not
8 demonstrated that the fact finder could accurately separate exempt employees from non-exempt
9 employees. *Id.* at 612. The court also noted that it had been "unable to locate any case in which
10 a court permitted a plaintiff to establish the non-exempt status of class members, especially with
11 respect to the outside sales exemption, through statistical evidence or representative testimony."
12 *Id.* Further, even if the plaintiff were able to "establish the prima facie case using some form of
13 common proof," the court noted that fact would not end the inquiry.

14 "[I]f the adjudication of a defense for which the defendant has the burden of proof
15 would necessitate individual inquiries, and those inquiries would predominate over inquiries
16 into common questions, certification should be denied." *Id.* Finally, the court rejected the
17 plaintiff's argument that the case presented the single common question of the nature of the
18 position's primary duty, because "not all of [the] claimed exemptions hinge[d] on the ... job
19 function." *Id.* at 613. The court again focused on the outside sales exemption, which it stated
20 "has nothing to do with what an employee does; it focuses solely on where an employee
21 completes his or her work." *Id.* Because the plaintiff did not come forth with any common
22 proof, such as a corporate policy that dictated how and where class members spent their day, the
23 court concluded that plaintiff had not met her burden on the predominance prong of Rule 23.
24 *Id.* at 610-613.

25 In this case, as in *Vinole* and *In re Wells Fargo II*, it is undisputed that U.S. Bank
26 uniformly characterizes BBOs as exempt employees, however that fact is not dispositive of the
27 issue. In addition, as in the *In re Wells Fargo II*, case , the record shows that BBOs went
28 through the same basic training and had the same primary goals, *i.e.* to sell U.S. Bank's

11

1  financial products, including loans and lines of credit to their clients.  (Docket No. 161,
2  Plaintiff's Compendium of Evidence ("PCE"), Ex. 36 (Deposition of Matthew Gediman
3  ("Gediman Depo.") at 185:14-186:8.)  The record also shows that U.S. Bank had a uniform job
4  description for the BBO position, during the class period.  (Gediman Depo. at 161:2-5.)  That
5  Job Description states that the "essential functions" of the position required BBOs to engage in
6  outside sales activities, and that "[m]ore than 80% if the time" was expected to be spent on such
7  activities.  (Docket No. 146, Declaration of Teresa W. Ghali ("Ghali Decl."), ¶ 15, Ex. M (2005
8  Job Description).)  Thus, unlike in *Vinole* and the *In re Wells Fargo* cases, U.S. Bank did have a
9  uniform policy that governed the BBOs' duties, *i.e. what* BBOs were expected to do throughout
10 their day.

11     The 2005 Job Description includes statements that at least some of these activities
12 should take place at a prospective client's place of business, on "joint outside sales calls," or at
13 civic and community functions.  (*Id.*)  However, until July 1, 2009, the BBO Job Description
14 did not contain an explicit requirement about how much time a BBO must spend outside of the
15 office.  In addition, at least until 2010, U.S. Bank did not have a formal, uniform policy in place
16 to monitor where BBOs conducted their business.[8]  (*See* Ghali Decl., ¶ 18, Ex. Q (U.S. Bank's
17 Objections and Responses to Trahan's Form Interrogatories, Set One; PCE, Ex. 42 (Excerpts of
18 *Duran* Trial Transcript ("*Duran* Tr.") at 3087:8-18, 3090:26-3091:1.)  Thus, as in *Vinole* and
19 the *In re Wells Fargo* cases, there is no evidence of a uniform, company-wide policy directing
20 BBOs about *where* to spend their day or a uniform policy in place to monitor where BBOs
21 conducted their business.  *See, e.g., In re Wells Fargo I*, 571 F.3d at 959.  In addition, and
22 contrary to the Superior Court's conclusion, the Court finds that the declarations submitted by

---

[8] The Class Period in this case ends on June 30, 2009.  On July 1, 2009, U.S. Bank revised the BBO Job Description, and included an explicit requirement that "[m]ore than one-half of the [BBOs] working time is expected to be spent outside of any Bank property or location[.]"  (Ghali Decl., ¶ 16, Ex. N.)  In January 2010, U.S. Bank required BBOs to certify on a quarterly basis that they had spent over fifty percent of their time outside U.S. Bank locations.  (*See* Ghali Decl., ¶ 18, Ex. Q.)

12

1 the parties from class members do show material variations about where and how they spent
2 their time.[9]

3 Therefore, although there are a number of common issues, the Court finds that in order
4 "to determine if each [BBO] qualified for the outside sales exemption the [Court] would need to
5 conduct 'inquiries into how much time each individual [BBO] spent in or out of the office and
6 how the [BBO] performed his or her job; all of this where the [BBO] was granted almost
7 unfettered autonomy to do his or her job.' Those inquiries would inevitably consume the
8 majority of a trial, and overwhelm the adjudication of common issues." *In re Wells Fargo II*,
9 268 F.R.D. at 611 (quoting *Vinole*, 571 F.3d at 947).

10 Moreover, even if the Court were to conclude, as the Superior Court did, that common
11 issues still predominate, the Court would deny the motion for the reasons set forth in the
12 following section.

**3. Superiority.**

14 Trahan must establish that class resolution is "'superior to other available methods for
15 the fair and efficient adjudication of the controversy.'" *Hanlon*, 150 F.3d at 1022 (quoting Fed.
16 R. Civ. P. 23(b)(3)). The superiority requirement includes an examination of whether the case
17 can be managed effectively. Before U.S. Bank removed the case to this Court, Trahan proposed
18 to use representative testimony to establish liability. However, in light of this Court's ruling on
19 his motion to conduct a survey, Trahan has abandoned reliance on representative testimony or
20 statistical evidence to establish liability. Rather, he proposes a bifurcated trial. According to
21 Trahan, the first phase will address the issue of liability based on an assessment of whether U.S.
22 Bank's expectations about the BBO position are realistic.[10] Then, according to Trahan, the

---

[9] The Superior Court excluded declarations and evidence that pertained to events that occurred outside the Class Period. Although the probative value of such evidence may be marginal to the issues presented by this motion, this Court cannot say that the evidence is entirely irrelevant. In addition, although the declarations submitted by U.S. Bank are vague as to time, the Court finds them relevant, because they show it is likely that at least some of the class members may have been exempt during the Class Period.

[10] Trahan also moves the Court to certify the issue of whether U.S. Bank's expectations are realistic. The Court DENIES that request, because an answer to that question still would not effectively resolve the issue of liability.

13

"presumption that the BBO position is nonexempt will carry forward" and class members will have the opportunity to prove up damages, subject to [U.S. Bank's] challenges." (Opp. Br. at 4:1-16.)

Trahan's approach appears to be similar to the position that the plaintiffs advocated in *Duran*, *i.e.* that the case can be tried along the model of a disparate treatment case. *See Duran*, 59 Cal. 4th at 35-37. In addition, as in *Duran*, Trahan's proposal to bifurcate the trial appears to conflate the issue of whether U.S. Bank is *liable* to a specific class member for failure to pay overtime with the damages any given class member may be owed. *Id.* at 37 (noting that "plaintiff's vision of a wage and hour class action trial conflates liability and damages"). The Court finds that Trahan's proposal suffers from the same flaws identified by the court in *In re Wells Fargo II*, albeit in the context of the predominance analysis. 268 F.R.D. at 612-13. Trahan has neither offered a persuasive explanation as to how any testimony presented could be extrapolated across class members to establish liability nor identified a means by which U.S. Bank could "show that its liability is reduced because some plaintiffs were properly classified as exempt." *Duran*, 59 Cal. 4th at 38.

## CONCLUSION

Because Trahan has not met his burden to show that the predominance and superiority prongs of Rule 23 are satisfied, the Court GRANTS U.S. Bank's motion, and it DECERTIFIES the class. In light of this ruling, the Court HEREBY ORDERS the parties to appear for a status conference on February 20, 2015 at 11:00 a.m. The parties shall file a joint status conference statement by February 13, 2015.

**IT IS SO ORDERED.**

Dated: January 6, 2015

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

14